IN THE DISTRICT COURT FOR OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

FEB 12 2016

TIM RHODES
COURT CLERK
34

STATE OF OKLAHOMA, ex rel., JOHN D. DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR DRIVER'S INSURANCE COMPANY,

Plaintiff,

vs.

EISNERAMPER, LLP, successor to AMPER, POLITZNER & MATTIA, LLP;,
Defendants.

CJ 2016-780

Case No. CJ-2016-

JURY TRIAL DEMANDED

## PETITION

That State of Oklahoma *ex rel.* John D. Doak, Insurance Commissioner, as Receiver for Driver's Insurance Company ("DIC"), in Liquidation, brings this action against EisnerAmper, LLP, successor to Amper, Politzner & Mattia, LLP, ("EisnerAmper") for the reason that EisnerAmper provided negligent audit services to DIC, and for breach of contract concerning their audit engagement with DIC. As a consequence of EisnerAmper's acts of negligence and errors and omissions in the performance of its duties and fiduciary role, EisnerAmper damaged Plaintiff, with exact damages to be established at trial. This Petition is supported by the Affidavit of Terry Smith, Assistant Receiver ("Affidavit of Merit"), a true and correct copy of which is attached hereto as Exhibit 1.

EXHIBIT
1

In further support of its claims, Plaintiff states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. DIC is an Oklahoma domiciled insurance company in liquidation pursuant to *Consent Order of Liquidation with Finding of Insolvency and Permanent Injunction* of the District Court of Oklahoma County, State of Oklahoma, dated May 13, 2013, in *State of Oklahoma ex rel John Doak v. Driver's Insurance Company,* Case No. CJ-2013-694 (filed January 31, 2013). DIC is under the direction of Receiver John Doak, Commissioner of Insurance for the State of Oklahoma, and is under the supervision of the District Court of Oklahoma County, Oklahoma.

2. DIC primarily wrote non-standard, minimum limits personal auto insurance coverage.

3. Amper, Politzner & Mattia, LLP, was a Limited Liability Partnership, with its principal place of business in New Jersey.

4. EisnerAmper, LLP, is a Limited Liability Partnership, with its principal place of business in New York and its registered service agent in Pennsylvania.

5. Amper, Politzner & Mattia, LLP and Eisner, LLP, together merged and formed EisnerAmper, LLP, in August of 2010.

6. Amper, Politzner & Mattia, LLP, and EisnerAmper were at times relevant to this Petition the independent auditors for DIC. EisnerAmper is registered to do

business in Oklahoma, and is a public accounting firm authorized to practice public accountancy in the State of Oklahoma.

7. Amper, Politzner & Mattia, LLP and EisnerAmper directed their activities to Oklahoma County by performing financial audits of DIC's SAP-basis financial statements that were to be submitted to the Oklahoma Insurance Department.

8. This Court has jurisdiction and venue over the parties and matters set forth herein. *See* Oklahoma Uniform Insurers Liquidation Act ("OUILA"), OKLA. STAT. tit. 36, § § 1901, 1902.

## GENERAL INFORMATION REGARDING EISNERAMPER, LLP

9. Oklahoma domiciled insurance companies are regulated by the Oklahoma Insurance Department in part to make sure that the insurance companies maintain enough assets, known as "admitted assets," to pay the claims made on the insurance policies which the insurance companies sell.

10. As an insurance company regulated by the Oklahoma Insurance Department, DIC was required by OKLA. STAT. tit. 36, § 311 to submit annual audited financial statements to the Oklahoma Insurance Department.

11. Amper, Politzner & Mattia, LLP, conducted the statutorily required annual financial audit of DIC for the year ended December 31, 2009. DIC's 2009 audited financial statements were submitted to the Oklahoma Insurance Department.

12. EisnerAmper, LLP, conducted the statutorily required annual financial audits of DIC for the years ended December 31, 2010 and 2011. DIC's 2010 audited financial statements were submitted to the Oklahoma Insurance Department.

13. EisnerAmper failed to issue an opinion on DIC's 2011 audited financial statements, though EisnerAmper completed a substantial portion of the 2011 audit work and had contracted to complete the same.

14. As part of that process, for the years 2010 and 2011, EisnerAmper also submitted "**Awareness Letters**" to DIC's Board of Directors, Management and the Oklahoma Insurance Department. The purpose of these letters is to confirm that EisnerAmper understood its important statutory duties and was aware of the Oklahoma Insurance provisions and statutes relating to DIC's accounting and financial matters, as well as EisnerAmper's annual audited report. It also affirms that EisnerAmper will express an opinion in terms of DIC's financial statements in conformity with SAP.

15. In its "Awareness Letters," EisnerAmper represented that it understood the provisions related to the accounting and financial reporting matters in the Oklahoma Insurance Code and the related rules and regulations of the Oklahoma Insurance Department that were applicable to the audits of financial statements of insurance enterprises. EisnerAmper acknowledged that it had a contractual duty to review, test, verify and/or validate, in accordance with generally accepted auditing standards, DIC's

financial statements. EisnerAmper also represented that it would issue a report on DIC's financial statements in terms of their conformity to the Statutory Accounting Practices ("SAP") prescribed or otherwise permitted by the Oklahoma Insurance Department.

16. As part of DIC's statutorily required annual audits, EisnerAmper also submitted a **"Qualification Letter"** to DIC's Board of Directors, Audit Committee, Management and the Oklahoma Insurance Department for 2010. The "Qualification Letter" prepared by EisnerAmper, pledged as follows:

a. that EisnerAmper is independent with respect to DIC;

b. that EisnerAmper conforms to the standards of the accounting profession as contained in the Code of Professional Conduct and pronouncements of the American Institute of Certified Public Accountants;

c. that EisnerAmper's Engagement Partner and Engagement Manager are certified public accountants, and are experienced in auditing insurance enterprises; and,

d. that EisnerAmper understands that DIC intends to file its audited statutory financial statements and EisnerAmper's Report thereon with the Oklahoma Insurance Department and that the Insurance Commissioner of Oklahoma will be relying on that information in monitoring and regulating DIC's statutory financial condition.

17. As part of DIC's statutorily required annual audits, EisnerAmper was also required to issue a "Report on Internal Controls" to the Oklahoma Insurance Department describing any significant deficiencies in DIC's internal control noted during the audit. EisnerAmper was not required to issue a Report on Internal Controls if it did not identify significant deficiencies during the audit. EisnerAmper did not issue a Report on Internal Controls for any of the 2009, 2010 or 2011 statutory audits of DIC.

18. As part of DIC's statutorily required annual audits, EisnerAmper was also required to issue a "Notification of Adverse Financial Condition" to DIC's board of directors or audit committee in writing within five (5) business days of determination of one of the following:

a. DIC had materially misstated its financial condition as reported to the Oklahoma Insurance Department as of the balance-sheet data currently under audit, or

b. DIC did not meet the minimum capital and surplus requirements of the Oklahoma insurance statute as of the balance sheet date.

19. A determination that financial statements filed with the Oklahoma Insurance Department are materially misstated does not necessarily always occur when an audit is complete. Thus, this requirement requires notification to be provided within five (5) business days of such determination. DIC was then required to provide a copy

of EisnerAmper's Notification of Adverse Financial Condition to the Oklahoma Insurance Department and to provide EisnerAmper with evidence that notification had been provided to the Oklahoma Insurance Department. EisnerAmper did not issue a Notification of Adverse Financial Condition for any of the 2009, 2010 or 2011 statutory audits of DIC.

20. EisnerAmper's audit services of DIC's 2009, 2010 and 2011 financial statements fell outside acceptable professional standards and constitutes professional negligence. (*See* **Exhibit 1**)

**EISNERAMPER'S AUDIT CONDUCT**

21. EisnerAmper violated Generally Accepted Auditing Standards ("GAAS") by failing to exercise due professional care in the performance of its audits and the preparation of its audit reports.

22. EisnerAmper's services and conduct fell outside acceptable standards, as EisnerAmper failed to obtain a sufficient understanding of DIC and its environment, including its internal controls, in order to adequately identify and assess the risks of material misstatement in DIC's SAP-basis financial statements.

23. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper improperly assessed DIC's internal control risks despite having knowledge of DIC's history of having numerous accounting errors in its records

requiring material audit adjustments and the filing of amendments to its Annual Statements with the Oklahoma Insurance Department.

24. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to properly consider the risks related to DIC's internal financial reporting processes and failed to understand how those risks were addressed.

25. EisnerAmper's services and conduct fell outside acceptable standards, as EisnerAmper failed to adequately design the nature, timing and extent of its audit procedures and failed to perform adequate audit procedures with respect to the performance of its duties.

26. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain sufficient, appropriate audit evidence to afford a reasonable basis for an opinion regarding DIC's SAP-basis financial statements under audit.

27. One of the areas of focus in a statutory audit of a regulated insurance company is the careful monitoring of "related party," or affiliate transactions. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify the risks of material misstatement in DIC's SAP-basis financial statements due to the material related party transactions and the complexities and interrelations within the Holding Company System. As a result of that audit failure,

EisnerAmper failed to properly respond to these risks of material misstatement in its planning of the audit, and in the performance of its audit procedures and its evaluation of audit evidence.

28. DIC made personal mortgage loans and/or pledged collateral to related parties. DIC also engaged in significant affiliated transactions with its managing general agent and with other affiliated entities.

29. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform the necessary procedures to properly evaluate whether DIC's accounting and reporting of those material related party transactions were in conformity with SAP. EisnerAmper also failed to properly evaluate the collectability of the material amounts owed to DIC by the affiliated entities.

30. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform necessary procedures to understand the purpose, nature and extent of the claims adjudication services purportedly performed for DIC.

31. DIC held material investments in other mortgage loans and real estate, however, DIC failed to follow the SAP guidance with regard to the proper methods to account for and value those investments. As a result of those valuation issues, DIC's investments were overstated.

32. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform the necessary procedures to properly evaluate whether DIC's valuation methods and accounting for those material investments in mortgage loans and real estate were in conformity with SAP.

33. DIC's Annual Statements' Schedule P contained numerous errors that were caused by accounting errors in the recording of DIC's reinsurance commutations. The data contained in Schedule P is used as the basis for estimating an insurance company's loss reserve estimates.

34. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify that DIC had not properly accounted for its reinsurance program.

35. DIC engaged consulting actuaries to assist in the determination of its Loss and Loss Adjustment Expense ("LAE") reserve estimates. Throughout the relevant timeframe, DIC's net reserves for Loss and LAE were materially understated. EisnerAmper was responsible for evaluating the reasonableness of DIC's loss reserve estimates.

36. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain a sufficient understanding of the controls related to the completeness, accuracy and classification of DIC's loss data. Furthermore,

EisnerAmper failed to properly audit the reconciliations of the data contained in DIC's Annual Statements' Schedule P to the underlying accounting records. As a result, EisnerAmper failed to identify the reporting errors in Schedule P.

37. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to fulfill certain fundamental requirements with regard to the use and reliance on the actuarial certifications of DIC's Loss and LAE reserve estimates as determined by DIC's consulting actuaries.

38. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain sufficient, appropriate audit evidence for its audit and opinions regarding DIC's Loss and LAE reserve estimates.

39. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper improperly issued unqualified audit opinions on DIC's SAP-basis financial statements. EisnerAmper's audit opinions improperly stated that DIC's financial statements presented "fairly, in all material respects, the admitted assets, liabilities, and surplus of the Company... and the results of its operations and changes in surplus and its cash flow..." in conformity with SAP.

40. The numerous errors in DIC's December 31, 2009, 2010 and 2011 SAP-basis financial statements were material. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify DIC's financial reporting

errors and failed to determine that such financial reporting errors resulted primarily from the lack of an effective system of internal controls surrounding DIC's ability to prepare reliable financial statements that were fairly presented in conformity with SAP. Accordingly, EisnerAmper failed to issue a Report on Internal Controls to the Oklahoma Insurance Department that described the significant deficiencies in DIC's internal control.

41. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify that DIC had materially misstated its financial condition as reported to the Oklahoma Insurance Department as of the balance sheet dates under audit, and/or EisnerAmper also failed to determine that DIC did not meet the minimum capital and surplus requirements of the Oklahoma insurance statutes as of the balance sheet dates. Accordingly, EisnerAmper failed to issue a Notification of Adverse Financial Condition for DIC to the insurer's board of directors to be provided to the Oklahoma Insurance Department.

42. In accordance with GAAS, the auditor has a responsibility to evaluate whether there is substantial doubt about the entity's ability to continue as a going concern for a reasonable period of time.

43. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to disclose that substantial doubt existed about DIC's ability to continue as a "going concern."

## FIRST CAUSE OF ACTION – PROFESSIONAL NEGLIGENCE OF EISNERAMPER

44. The allegations sets forth in paragraphs 1 through 43 are incorporated herein by reference.

45. EisnerAmper owed duties to investigate, assess, and issue an audit opinion on DIC's 2009, 2010 and 2011 SAP-basis financial statements for submission by DIC to the Oklahoma Insurance Department.

46. In performing its audits of DIC, EisnerAmper failed to perform to the standards of its profession by acting in a grossly negligent manner, or at the very least, in a negligent manner, resulting in actual damages to DIC.

47. EisnerAmper's breaches of duty were the direct and proximate cause of substantial monetary damages to DIC, as losses were occurred on insurance policies that would not have written but for EisnerAmper's negligence.

48. Because of EisnerAmper's negligence, errors and omissions, gross negligence and/or reckless conduct, DIC is entitled to an award of its actual damages in an amount to be determined at trial in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

49. Because EisnerAmper's conduct was intentional and with malice, DIC is entitled to an award of punitive/exemplary damages in an amount to be determined at trial in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**SECOND CAUSE OF ACTION –BREACH OF CONTRACT**

50. The allegations sets forth in paragraphs 1 through 49 are incorporated herein by reference.

51. EisnerAmper signed multiple engagement letters, each a contract (collectively, the "Engagement") to perform the annual statutory financial audits for DIC.

52 EisnerAmper, in performing the audits on DIC's 2009, 2010 and 2011 SAP-basis financial statements, performed such engagements with negligence and/or gross negligence such that DIC's financial condition was materially overstated.

53. DIC paid EisnerAmper for performing DIC's 2009, 2010 and 2011 statutory audits, the exact amount to be determined at trial.

54. EisnerAmper failed to perform their obligations under the contract by, among other things, failing to perform its 2009, 2010 and 2011 audits of DIC's SAP-basis financial statements in accordance with GAAS, failing to issue a "Report on Internal Controls" to the Oklahoma Insurance Department that described the deficiencies in DIC's

internal controls, and by failing to issue a Notification of Adverse Financial Condition for DIC

55. EisnerAmper failed to complete DIC's 2011 annual statutory financial audit, resulting in actual damages to DIC.

56. Because EisnerAmper failed to perform under the Engagement, DIC is entitled to actual damages over $100,000.00, plus pre- and post-judgment interest.

57. Because EisnerAmper's conduct was intentional and with malice, DIC is entitled to an award of punitive/exemplary damages in an amount to be determined at trial.

**CONCLUSION**

WHEREFORE, Plaintiff, the State of Oklahoma *ex rel.* John Doak, Insurance Commissioner, as Receiver for DIC, respectfully requests that judgment be entered against EisnerAmper, LLP, and in favor of DIC in amount to be proven at trial, including actual and punitive damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code; that DIC be awarded pre-judgment and post-judgment interest; that DIC be awarded its attorneys' fees; that the Court tax all costs, including discretionary costs, against Eisner Amper, LLP; and that DIC be awarded such other, further and general relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

s/Stephen Jones

Stephen Jones, OBA #4805
April McCurdy Davis, OBA #17854
Jamie Bloyd, OBA #30989
JONES, OTJEN, DAVIS & BLOYD
P.O. Box 472
Enid, Oklahoma 73702-0472
(580) 242-5500 (phone)
(580) 242-4556 (fax)
sjones@stephenjoneslaw.com
adavis@stephenjoneslaw.com
jbloyd@stephenjoneslaw.com
ATTORNEYS FOR THE PLAINTIFF,
STATE OF OKLAHOMA, ex rel.
JOHN DOAK, INSURANCE
COMMISSIONER, AS RECEIVER FOR
DRIVER'S INSURANCE COMPANY

**Affidavit of Merit of Terry K. Smith**

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Terry Smith, after first being duly sworn, hereby deposes and states:

1. My name is Terry K. Smith. I am over the age of 18 years and otherwise competent to testify to the matters set forth herein. Each of the statements set forth herein is true and correct based on my personal knowledge.

2. I am the Assistant Receiver of Driver=s Insurance Company, Inc., (ADIC@) the Plaintiff in the action styled *State of Oklahoma ex rel. John Doak, Insurance Commissioner, as Receiver for Driver=s Insurance Company Inc. v. EisnerAmper, LLP* (the ALawsuit@), and I am also a Certified Public Accountant.

3. I have reviewed certain facts available at this time surrounding the auditing services provided by EisnerAmper, LLP, to DIC.

4. I have consulted and reviewed the facts of the lawsuit with Edward Buttner, CPA, a qualified expert in the field of accounting and auditing requirements for regulated insurance companies, with over 38 years of experience.

5. I have obtained a written opinion from Mr. Buttner that clearly identifies, based upon a review of available material, records, standards and facts, that a reasonable interpretation of same supports a finding that the conduct of EisnerAmper constituted negligence.

6. On the basis of the review and consultation with Mr. Buttner, I have concluded that the Lawsuit is meritorious and based on good cause.

FURTHER AFFIANT SAYETH NOT.

Terry K. Smith

Subscribed and sworn to before me this 11 day of February, 2016.

Andrea Dolan
Notary Public, 07002750

ANDREA DOLAN
Notary Public, State of Oklahoma
Commission # 07002750
My Commission Expires March 30, 2019

EXHIBIT 1