**IN THE UNITED STATEDISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, ex rel., | ) | |
| JOHN D. DOAK, INSURANCE | ) | |
| COMMISSIONER, AS RECEIVER FOR | ) | |
| DRIVER'S INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-2016-224-C |
| | ) | |
| EISNERAMPER, LLP, successor to AMPER, | ) | JURY TRIAL DEMANDED |
| POLITZNER & MATTIA, LLP; , | ) | |
| Defendants. | | |

## <u>AMENDED COMPLAINT</u>

That State of Oklahoma ex rel. John D. Doak, Insurance Commissioner, as Receiver for Driver's Insurance Company ("DIC"), in Liquidation, brings this action against EisnerAmper, LLP, successor to Amper, Politzner & Mattia, LLP, for the reason that EisnerAmper provided negligent auditing services to DIC, for breach of contract, and for negligent misrepresentation/constructive fraud.   As a consequence of EisnerAmper's respective acts EisnerAmper damaged Plaintiff. This Amended Complaint is supported by the Affidavit of Terry Smith, Assistant Receiver ("Affidavit of Merit"), a true and correct copy of which is attached hereto as Exhibit 1.

In further support of its respective claims, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      DIC is an Oklahoma domiciled insurance company in liquidation.  *State of Oklahoma ex rel John Doak v. Driver's Insurance Company*, Case No. CJ-2013-694 (filed January 31, 2013).  DIC is administered under the direction of Receiver John D. Doak, Commissioner of Insurance for the State of Oklahoma, and the supervision of the District Court of Oklahoma County, Oklahoma.

2.      DIC wrote non-standard, minimum limits personal auto insurance coverage.

3.      Amper, Politzner & Mattia, LLP, was a Limited Liability Partnership, with its principal place of business in New Jersey.

4.      EisnerAmper, LLP, is a Limited Liability Partnership, with its principal place of business in New York and its registered service agent in Pennsylvania.

5.      Amper, Politzner & Mattia, LLP and Eisner, LLP, merged into EisnerAmper, LLP, in August of 2010.

6.      Amper, Politzner & Mattia, LLP, and EisnerAmper were at times relevant to this Petition independent auditors for DIC.  EisnerAmper is registered to do business in Oklahoma.

7.      The Receiver brings this action pursuant to the Oklahoma Uniform Insurers Liquidation Act ("OUILA"), OKLA. STAT. tit. 36, § § 1901, 1902.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum

or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant.

8.      Venue is proper in this district under 28 U.S.C. § 1391, as DIC was an Oklahoma domiciled insurer, EisnerAmper is licensed to do business in Oklahoma, and a substantial part of the events or omissions that give rise to the Receiver's claim occurred within the Western District of Oklahoma.

## BACKGROUND

9.      EisnerAmper was engaged to conduct three separate audits of DIC's statutory-basis financial statements for the years ending December 31, 2009, 2010 and 2011.[1]

10.      EisnerAmper knew that DIC's audited financial statements were to be filed with the OID, and that the OID would rely on that information to monitor and regulate DIC's financial condition.

11.      DIC executed EisnerAmper's 2009 Engagement Letter on November 23, 2009.  The 2009 Engagement Letter contained a jurisdictional clause for the Superior Court of New Jersey, Middlesex County, but no jury trial waiver and/or choice of law provision.

12.      EisnerAmper issued an unqualified audit opinion of DIC's 2009 financials on June 25, 2010.  "In our opinion, the statutory basis financial statements referred to above

---

[1] The year 2011 is only being included by way of background.  Plaintiff is not asserting a cause of action against EisnerAmper for their engagement on the 2011 audit.

present fairly, in all material respects, the admitted assets, liabilities, capital and surplus of

the Company as of December 31, 2009, and the results of its operations, changes in capital

and surplus and its cash flows for the year then ended, on the basis of accounting described

in Note 2." (Def.'s Independent Auditor's Report of DIC, 6/25/10)

13.    On December 16, 2010, DIC executed EisnerAmper's 2010 Engagement

Letter.    The 2010 Engagement Letter contained a jury waiver provision, but no

jurisdictional or choice of law provisions.

14.    Also on December 16, 2010, EisnerAmper delivered DIC its Audit Service

Delivery Plan in preparation for the 2010 audit.  This was a standard delivery plan and

raised no concerns regarding the upcoming audit.

15.    While EisnerAmper was auditing DIC's 2009 financials, the OID was

conducting a multi-state, full scope, biennial examination of DIC covering the period of

January 1, 2008, through December 31, 2009.

16.    The 2009 Report on Financial Examination was submitted by the examiner

to the OID on or around February 22, 2011, and a certified copy was mailed to DIC on

March 7, 2011.

17.    Various problems with reserving and accounting were identified in this

examination, including that DIC's net reserves for Loss and LAE's as of December 31,

2009, were understated by approximately $1.1 million.

4

18.    On June 17, 2011, EisnerAmper issued an unqualified audit opinion of DIC's 2010 financials. "In our opinion, the statutory basis financial statements referred to above present fairly, in all material respects, the admitted assets, liabilities, and surplus of the Company as of December 31, 2010, and the results of its operations and changes in surplus and its cash flows for the year then ended, on the basis of accounting described in Note B." (Def.'s Independent Auditor's Report of DIC, 7/17/11)

19.    On December 29, 2011, DIC executed EisnerAmper's 2011 Engagement Letter.  The 2011 Engagement Letter contained a jury trial waiver provision, a New York jurisdictional provision, and a New York choice of law provision.

20.    On April 25, 2012, the OID placed DIC into agreed supervision.

21.    On July 25, 2012, the OID suspended DIC due to hazardous financial condition.

22.    Although EisnerAmper had performed considerable field work for the 2011 audit, EisnerAmper never issued an audit opinion on DIC's 2011 financial statements.

23.    On January 31, 2013, a Consent Order of Rehabilitation and Permanent Injunction was filed in the Oklahoma County District Court based upon OID findings that DIC was insolvent, and hazardous to the policyholders and creditors of DIC and the general public.

24.    Upon determination by the Oklahoma Insurance Commissioner that attempts to rehabilitate DIC would be futile, on May 13, 2013, the Oklahoma County District Court

entered an Order of Liquidation, placing DIC into liquidation under the purview of the Insurance Commissioner and the Oklahoma District Court.

25.     The Insurance Commissioner, as Receiver for DIC, is now charged with marshaling DIC's remaining assets and resolving its debts.

## GENERAL INFORMATION REGARDING EISNERAMPER, LLP

26.     Oklahoma domiciled insurance companies are regulated by the Oklahoma Insurance Department in part to make sure that the insurance companies maintain enough assets, known as "admitted assets," to pay the claims made on the insurance policies which the insurance companies sell.

27.     As insurance companies regulated by the Oklahoma Insurance Department, DIC is required by OKLA. STAT. tit. 36, § 311 to submit annual audited financial statements to the Oklahoma Insurance Department.

28.     The Oklahoma Insurance Department relies on the annual audited financial statements in the course of monitoring the financial stability of the insurance company, for the ultimate protection of the policy holders who can be damaged by the insolvency of an insurance company.

29.      Amper, Politzner & Mattia, LLP, conducted the statutorily required annual financial audit of DIC for the year ended December 31, 2009.  DIC's 2009 audited financial statements were submitted to the Oklahoma Insurance Department.

30.     EisnerAmper, LLP, conducted the statutorily required annual financial audits of DIC for the years ended December 31, 2010 and 2011.  DIC's 2010 audited financial statements were submitted to the Oklahoma Insurance Department.

31.     As part of that process, for the years 2010 and 2011, EisnerAmper also submitted "Awareness Letters" to the Oklahoma Insurance Department.  The purpose of this letter is to confirm that EisnerAmper understood its important statutory duties and was aware of the Oklahoma insurance provisions and statutes relating to DIC's accounting and financial matters, as well as EisnerAmper's annual audited report.  The "Awareness Letter" also affirms that EisnerAmper will express an opinion in terms of DIC's financial statements in conformity with Statutory Accounting Practices ("SAP").

32.     In its "Awareness Letters," EisnerAmper represented that it understood the provisions related to the accounting and financial reporting matters in the Oklahoma Insurance Code and the related rules and regulations of the Oklahoma Insurance Department that were applicable to the audits of financial statements of insurance enterprises. EisnerAmper acknowledged that it had a contractual duty to review, test, verify and/or validate, in accordance with generally accepted auditing standards ("GAAS"), DIC's financial statements.  EisnerAmper also represented that it would issue a report on DIC's financial statements in terms of their conformity to SAP prescribed or otherwise permitted by the Oklahoma Insurance Department.

33.     As part of DIC's statutorily required annual audits, EisnerAmper also submitted a "Qualification Letter" to DIC's Board of Directors, Audit Committee, Management and the Oklahoma Insurance Department for 2010.   The "Qualification Letter" prepared by EisnerAmper, pledged as follows:

a.     that EisnerAmper is independent with respect to DIC;

b.     that EisnerAmper conforms to the standards of the accounting profession as contained in the Code of Professional Conduct and pronouncements of the American Institute of Certified Public Accountants;

c.     that EisnerAmper's Engagement Partner and Engagement Manager are certified public accountants, and are experienced in auditing insurance enterprises; and,

d.     that EisnerAmper understands that DIC intends to file its audited statutory financial statements and EisnerAmper's Report thereon with the Oklahoma Insurance Department and that the Insurance Commissioner of Oklahoma will be relying on that information in monitoring and regulating DIC's statutory financial condition.

34.     As part of DIC's statutorily required annual audits, EisnerAmper was also required to issue a "Report on Internal Controls" to DIC describing any significant deficiencies in DIC's internal controls noted during the audit.

35.     As part of DIC's statutorily required annual audits, EisnerAmper was also required to issue a "Notification of Adverse Financial Condition" to DIC's board of directors or audit committee in writing within five (5) business days of determination of one of the following:

a.     DIC had materially misstated its financial condition as reported to the Oklahoma Insurance Department as of the balance-sheet data currently under audit, or

b.     DIC did not meet the minimum capital and surplus requirements of the Oklahoma insurance statute as of the balance sheet date.

36.     A determination that financial statements filed with the Oklahoma Insurance Department are materially misstated does not necessarily always occur when an audit is complete.  Thus, this requirement requires notification to be provided within five (5) business days of such determination.  DIC was then required to provide a copy of EisnerAmper's Notification of Adverse Financial Condition to the Oklahoma Insurance Department and to provide EisnerAmper with evidence that notification had been provided to the Oklahoma Insurance Department. EisnerAmper did not issue a Notification of Adverse Financial Condition for the 2009 or 2010 statutory audits of DIC.

37.     EisnerAmper's audit services of DIC's 2009 and 2010 financial statements fell outside acceptable professional standards and constitute professional negligence.  (*See* Exhibit 1)

## EISNERAMPER'S AUDIT CONDUCT

38.    EisnerAmper violated Generally Accepted Auditing Standards ("GAAS") by failing to exercise due professional care in the performance of its audits and the preparation of its audit reports.

39.    EisnerAmper's negligent audits masked DIC's hazardous financial condition, thereby delaying the OID's knowledge of DIC's true financial position, and causing waste of the company's assets and harm to its policyholders.

40.    EisnerAmper knew or should have known upon review of DIC's financial statements that DIC was not in sound financial condition.

41.    EisnerAmper failed to discover material misstatements and omissions in the financial statements of DIC during their 2009 and 2010 audits of DIC.

42.    EisnerAmper's services and conduct fell outside acceptable standards, as EisnerAmper failed to obtain a sufficient understanding of DIC and its environment, including its internal control, in order to adequately identify and assess the risks of material misstatement in DIC's SAP-basis financial statements.

43.    EisnerAmper's services and conduct fell outside acceptable standards, as EisnerAmper improperly assessed DIC's internal control risks despite having knowledge of DIC's history of having numerous accounting errors in its records requiring material audit adjustments and the filing of amendments to its Annual Statements with the Oklahoma Insurance Department.

44.     EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to properly consider the risks related to DIC's internal financial reporting processes and failed to understand how those risks were addressed.

45.     EisnerAmper's services and conduct fell outside acceptable standards, as EisnerAmper failed to adequately design the nature, timing and extent of its audit procedures and failed to perform adequate audit procedures with respect to the performance of its duties.

46.     EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain sufficient, appropriate audit evidence to afford a reasonable basis for an opinion regarding DIC's SAP-basis financial statements under audit.

47.     One of the areas of focus in a statutory audit of a regulated insurance company is the careful monitoring of "related party," or affiliate transactions. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify the risks of material misstatement in DIC's SAP-basis financial statements due to the material related party transactions and the complexities and interrelations within the Holding Company System.  As a result of that audit failure, EisnerAmper failed to properly respond to these risks of material misstatement in its planning of the audit, and in the performance of its audit procedures and its evaluation of audit evidence.

48.    DIC made personal mortgage loans and/or pledged collateral to related parties. DIC also engaged in significant affiliated transactions with its managing general agent and with other affiliated entities.

49.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform the necessary procedures to properly evaluate whether DIC's accounting and reporting of those material related party transactions were in conformity with SAP. EisnerAmper also failed to properly evaluate the collectability of the material amounts owed to DIC by the affiliated entities.

50.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform necessary procedures to understand the purpose, nature and extent of the claims adjudication services purportedly performed for DIC.

51.    DIC held material investments in other mortgage loans and real estate, however, DIC failed to follow the SAP guidance with regard to the proper methods to account for and value those investments. As a result of those valuation issues, DIC's investments were overstated.

52.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to perform the necessary procedures to properly evaluate whether DIC's valuation methods and accounting for those material investments in mortgage loans and real estate were in conformity with SAP.

53.    DIC's Annual Statements' Schedule P contained numerous errors that were caused by accounting errors in the recording of DIC's reinsurance commutations. The data used to prepare Schedule P and contained therein is the basis for estimating an insurance company's loss reserve estimates.

54.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify that DIC had not complied with statutory accounting principles in regards to the accounting and disclosure of reinsurance transactions.

55.    DIC engaged consulting actuaries to assist in the determination of its Loss and Loss Adjustment Expense ("LAE") reserve estimates.    Throughout the relevant timeframe, DIC's net reserves for Loss and LAE were materially understated. EisnerAmper was responsible for evaluating the reasonableness of DIC's loss reserve estimates.

56.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain a sufficient understanding of the controls related to the completeness, accuracy and classification of DIC's loss data. Furthermore, EisnerAmper failed to properly audit the reconciliations of the data contained in DIC's Annual Statements' Schedule P to the underlying accounting records. As a result, EisnerAmper failed to identify the reporting errors in Schedule P.

57.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to fulfill certain fundamental requirements with regard to the

use and reliance on the actuarial certifications of DIC's Loss and LAE reserve estimates as determined by DIC's consulting actuaries.

58.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to obtain sufficient, appropriate audit evidence for its audit and opinions regarding DIC's Loss and LAE reserve estimates.

59.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper improperly issued unqualified audit opinions on DIC's SAP-basis financial statements. EisnerAmper's audit opinions improperly stated that DIC's financial statements presented "fairly, in all material respects, the admitted assets, liabilities, and surplus of the Company… and the results of its operations and changes in surplus and its cash flow…" in conformity with SAP.

60.    The numerous errors in DIC's December 31, 2009 and 2010 SAP-basis financial statements were material. EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify DIC's financial reporting errors and failed to determine that such financial reporting errors resulted primarily from the lack of an effective system of internal controls surrounding DIC's ability to prepare reliable financial statements that were fairly presented in conformity with SAP.

61.    EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to identify that DIC had materially misstated its financial condition as reported to the Oklahoma Insurance Department as of the balance sheet dates

14

under audit, and/or EisnerAmper also failed to determine that DIC did not meet the minimum capital and surplus requirements of the Oklahoma insurance statutes as of the balance sheet dates. Accordingly, EisnerAmper failed to issue a Notification of Adverse Financial Condition for DIC to the insurer's board of directors to be provided to the Oklahoma Insurance Department.

62.     In accordance with GAAS, the auditor has a responsibility to evaluate whether there is substantial doubt about the entity's ability to continue as a going concern for a reasonable period of time.

63.     EisnerAmper's services and conduct fell outside acceptable standards because EisnerAmper failed to disclose that substantial doubt existed about DIC's ability to continue as a "going concern."

### FIRST CAUSE OF ACTION – PROFESSIONAL NEGLIGENCE OF EISNERAMPER AS TO THE 2009 AND 2010 AUDITS

64.     The allegations sets forth in paragraphs 1 through 63 are incorporated herein by reference.

65.      EisnerAmper owed duties to investigate, assess, and issue an audit opinion on DIC's 2009 and 2010 SAP-basis financial statements for submission by DIC to the Oklahoma Insurance Department.

66.     In performing its audits of DIC, EisnerAmper failed to perform to the standards of its profession by acting in a grossly negligent manner, or at the very least, in a negligent manner, resulting in actual damages to DIC.

67.     EisnerAmper's breaches of duty were the direct and proximate cause of substantial monetary damages to DIC, as losses were occurred on insurance policies that would not have written but for EisnerAmper's negligence.

68.     Because the actions of EisnerAmper alleged herein were conducted with gross negligence, malice, bad faith, and/or wanton or reckless disregard for Plaintiff's rights, DIC is entitled to an award of  actual and punitive damages in an amount to be determined at trial in excess of the amount required for diversity jurisdiction pursuant  to 28 U.S.C. § 1332.

**SECOND CAUSE OF ACTION –
BREACH OF CONTRACT AS TO THE 2009 AND 2010 AUDITS**

69.     The allegations set forth in paragraphs 1 through 68 are incorporated herein by reference.

70.     EisnerAmper signed multiple engagement letters, each a contract (collectively, the "Engagement") to perform the annual statutory financial audits for DIC.

71.     EisnerAmper, in performing the audits of DIC's 2009 and 2010 SAP-basis financial statements, performed such engagements with negligence and/or gross negligence such that DIC's financial condition was materially overstated.

72.     Because EisnerAmper failed to perform under the Engagement, DIC is entitled to actual damages in excess of $75,000.00.

## THIRD CAUSE OF ACTION –
## NEGLIGENT MISREPRESENTATION/CONTSTUCTIVE FRAUCONCLUSION
## AS TO THE 2009 AND 2010 AUDITS

73.    The allegations set forth in paragraphs 1 through 72 are incorporated herein by reference.

74.    By recklessly failing to exercise reasonable care in examining the materially misstated financial statements of DIC, upon which DIC reasonably relied to their injury, Defendant negligently misrepresented same and committed constructive fraud.

75.    The actions of the Defendant alleged herein were conducted with malice, oppression, bad faith, and/or a wanton or reckless disregard for Plaintiffs' rights, Plaintiff should be awarded punitive/exemplary damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff, the State of Oklahoma *ex rel*. John Doak, Insurance Commissioner, as Receiver for Driver's Insurance Company, respectfully requests that judgment be entered against EisnerAmper, LLP, and in favor of Driver's Insurance Company in amount to be proven at trial, including actual and punitive damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code; that Driver's Insurance Company be awarded pre-judgment and post-judgment interest; that DIC be awarded its attorney's fees; and that Driver's Insurance Company be awarded such other, further and general relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

 s/ Stephen Jones
Stephen Jones, OBA #4805
April McCurdy Davis, OBA #17854
Jamie Bloyd, OBA #30989
JONES, OTJEN, DAVIS & BLOYD
P.O. Box 472
Enid, Oklahoma 73702-0472
(580) 242-5500 (phone)
(580) 242-4556 (fax)
sjones@stephenjoneslaw.com
adavis@stephenjoneslaw.com
jbloyd@stephenjoneslaw.com
ATTORNEYS FOR THE PLAINTIFF,
STATE OF OKLAHOMA, ex rel.
JOHN DOAK, INSURANCE
COMMISSIONER, AS RECEIVER FOR
DRIVER'S INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2016, a true and correct copy of the

above and foregoing instrument was electronically transmitted to the Clerk of the Court

using the ECF system for filing and transmittal of notice of electronic filing to the following

ECF registrants: Phillip Whaley; Daniel Webber; Bruce Braun; and Kendra Stead.

s/ Stephen Jones